UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-22024-CIV-HUCK/BANDSTRA

MANUEL L. MATIENZO,

    Plaintiff,

vs.

MIRAGE YACHT, LLC,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Mirage Yacht's Motion for Summary Judgment [D.E. #41]. Defendant Mirage Yacht moves for summary judgment on Counts I and IV[1], arguing that Plaintiff Manuel Matienzo (1) lacks standing to bring a breach of contract claim, and (2) has not alleged facts satisfying all the elements of a claim for conversion. For the reasons discussed below, the Court denies Defendant Mirage Yacht's Motion for Summary Judgment.

**I.     UNDISPUTED FACTS**

Plaintiff Manuel Matienzo is a citizen and resident of Puerto Rico. (Compl. [D.E. #1] at 1.) Defendant Mirage Yacht, LLC, is a yacht manufacturer doing business in Miami-Dade County, Florida. (Def.'s Mot. for Summ. J. [D.E. # 41] at 1.) Mazyer Hatami is the President, Manager, and Managing Member of Defendant Mirage Yacht. (*Id*.) On or about March 13, 2003[2], Plaintiff

---

[1]Defendant's Motion for Summary Judgment addresses Counts I, II, III, and IV of the Complaint; however, Plaintiff voluntarily dismissed Counts II and III in its Opposition to Motion for Summary Judgment [D.E. # 47]. As such, the Court considers only the two remaining counts, Counts I and IV.

[2]There is a discrepancy in the record as to when the Original Contract was signed. When the Original Contract was signed is not disputed, but there are multiple dates referred to in the record. Defendant's Motion for Summary Judgment and Plaintiff's Opposition refer to March

Matienzo entered[3] into a yacht purchase order ("Original Contract") with Defendant for the purchase of a 61' Sports Fisherman Motor Vessel to be constructed by Defendant for a base price of $1,150,000.00. (*Id*.) An individual named Gullermo De Leon, the partner of Plaintiff Matienzo's son, Manolo Matienzo, in a boat resale company called Atlantic Marine Group, negotiated the Original Contract on Plaintiff Matienzo's behalf. (*Id*. at 3–4.) The Original Contract identifies Plaintiff Matienzo as the buyer of the Motor Vessel. (Compl. [D.E. #1] Ex. A at 4.) Around November 24, 2004, Manolo Matienzo signed a second yacht purchase order ("Second Contract") with Defendant in connection with the purchase and construction of the Motor Vessel. (Def.'s Mot. Summ. J. [D.E. #41] at 6.) Manolo Matienzo ordered the upgrades in the Second Contract and testified that the Second Contract was between him and Defendant. (*Id*.) The Second Contract identifies Manolo Matienzo as the buyer of the Motor Vessel. (*Id*. at 4–6.) It contains several negotiated upgrades for the Motor Vessel, a new contract price as a result of the upgrades, and an estimated delivery date of late spring 2005. (*Id*.) Plaintiff Matienzo testified that his name was not on the Second Contract because he authorized Manolo Matienzo, as his "representative and right hand person," to make changes to the contract, including listing himself as the buyer. (*Id*. at 5.) Manolo Matienzo stated that he understood that the Second Contract superceded the Original Contract between Defendant and Plaintiff Matienzo. (*Id*. at 6.) He also stated that he understood that the parties would be bound by the Second Contract. (*Id*.)

## II.   PROCEDURAL POSTURE

On June 18, 2010, Plaintiff Matienzo filed suit against Defendant Mirage Yacht, LLC, and Mazyer Hatami, President, Manager, and Managing Member of Mirage Yacht[4]. On February 14,

---

13, 2003 as the date the contract was signed, and the Original Contract itself is dated March 14, 2003 on the first page and March 16, 2003 on the last page. (Compl. [D.E. #1] Ex. A. at 4, 6.)

[3] Neither party disputes that the Original Contract was between Plaintiff Matienzo and Defendant. However, there is a question of who signed the Original Contract: both Plaintiff Matienzo and Manolo Matienzo testify that they signed it. (Not. [D.E. #56] Depo. of Plaintiff Matienzo. at 7; Not. [D.E. #56] Depo. of Manolo Matienzo at 11–12.)

[4] On March 28, 2011, Plaintiff voluntarily dismissed Count V of its Complaint, the only count against Mazyer Hatami. [D.E. #59]

2011, Defendant filed its Motion for Summary Judgment [D.E. #41], arguing that it is entitled to summary judgment (1) on Count I, because Plaintiff Matienzo was not a party to the Second Contract and does not have standing to sue for breach of it, and on (2) Count IV, because Plaintiff Matienzo never demanded Defendant return the allegedly converted funds. (Def.'s Mot. Summ. J. [D.E. #41] at 8–9, 14–15.)

On March 3, 2011, Plaintiff Matienzo filed his Opposition to Motion for Summary Judgment [D.E. #47], arguing that summary judgment should be denied as to both counts because (1) although his name is not on the Second Contract, Plaintiff Matienzo is principal to the Second Contract and can sue for its breach because Manolo Matienzo signed it in his capacity as Plaintiff Matienzo's agent[5], and (2) demand of the converted funds is not an element of conversion.[6]   On March 13, 2011, Defendant filed its Reply [D.E. #57], arguing that the Second Contract, coupled with deposition testimony from both Plaintiff Matienzo and Manolo Matinezo, establish that Manolo Matinezo executed the Second Contract as the buyer, not as Plaintiff Matienzo's agent. (Def.'s Reply [D.E. #57] at 1–2.)  Defendant Mirage Yacht did not reply to Plaintiff Matienzo's argument with regard to Count IV.

### III. ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If there a genuine dispute as to any material facts, those "must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  There is only a genuine issue for trial if the record, taken as a whole, could "lead a rational trier of fact to find for the nonmoving party." *Id*. (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

#### B. Count 1: Breach of Contract

---

[5] Pl.'s Opp'n to Mot. Summ. J. [D.E. #47] at 4.

[6] *Id*. at 6.

Defendant's Motion for Summary Judgment should be denied as to Count I because there is genuine dispute of material fact regarding Plaintiff Matienzo's standing to sue Defendant for breach of the Second Contract. There is evidence in the record from which it could be determined that (1) an agency relationship existed between Plaintiff Matienzo and Manolo Matienzo and that (2) Manolo Matienzo signed the Second Contract as Plaintiff Matinezo's agent.

### 1. *Existence of an Agency Relationship*

The facts in Plaintiff Matienzo and Manolo Matienzo's depositions and affidavits indicate that an agency relationship existed between them. Under Florida law, "[t]he existence of an agency relationship is ordinarily a question to be determined by a jury in accordance with the evidence adduced at trial." *Orlando Executive Park Inc. v. Robbins*, 433 So.2d 491, 494 (Fla.1983). The question of whether an agency relationship existed may be resolved by summary judgment only in instances where "the evidence is capable of just one interpretation." *Kobel v. Schlosser*, 614 So.2d 6, 7 (Fla. 4th Dist. Ct. App.1993). The elements of an actual agency relationship are "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Kaloe Shipping Co. Ltd. v. Goltens Service Co., Inc.*, No. 06-22186-CIV, 2011 WL 677372, at *4 (S.D. Fla. Feb. 16, 2011) (quoting *Attorney's Title Ins. Fund, Inc. v. Regions Bank*, 491 F. Supp.2d 1087 (S.D. Fla 2007)) (citing *Goldschmidt v. Holman*, 571 So.2d 422, 424 n.5 (Fla.1990)). When analyzing the third element of actual agency, "it is the right to control, rather than actual control, that may be determinative." *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003). An agent's authority "may be conferred by writing, by parole, or it may be inferred from the related facts of the case." *Gilson v. TD Bank, N.A.*, No. 10-20535-CIV, 2011 WL 294447, at *3 (S.D. Fla. Jan. 27, 2011) (citing *Thompkin Corp. v. H.D. Miller,* 24 So.2d 48, 49 (Fla. 1945)).

### (a) *Acknowledgment by Principal*

There is evidence in the record that Plaintiff Matienzo, the purported principal, acknowledged that Manolo Matienzo, the purported agent, had the authority to act for him. In his deposition, Plaintiff Matienzo stated that he authorized Manolo to speak and sign contracts on his behalf regarding all matters related to the Motor Vessel that Defendant was building. (Pl.'s Opp'n [D.E. #47] Ex. B at 2.) Plaintiff Matienzo also stated that he authorized Manolo "to change things

for the better of the product we were going to get." (*Id*. at 4.) Plaintiff Matienzo further stated that Manolo was in charge of taking care of and solving all the problems surrounding the construction of the Motor Vessel. (*Id*. at 8.) Finally, Plaintiff Matienzo stated that at the time the Second Contract was signed, Manolo handled matters dealing with Defendant's construction of the Motor Vessel. (*Id*.) In addition to his deposition testimony, Plaintiff Matienzo signed a sworn affidavit attesting to the existence of an agency relationship with Manolo. (Pl.'s Opp'n [D.E. #47] Ex. D.) In the affidavit, Plaintiff Matienzo stated that, beginning in 2003, he authorized Manolo to enter into negotiations with Defendant on his behalf for the construction of a Motor Vessel. (*Id*. at 1.) Defendant has not supplied any evidence contradicting these facts. Plaintiff Matienzo's deposition statements, along with the attestations in his affidavit, indicates that he acknowledged Manolo Matienzo's authority to act as his agent.

　　　　　　　　　　(b)　　*Acceptance by Agent*

There also is evidence in the record indicating that Manolo Matienzo accepted the agency relationship with Plaintiff Matienzo. In his deposition, Manolo stated that after Plaintiff Matinezo authorized him act as his agent, he did so by communicating on Plaintiff Matienzo's behalf with Defendant regarding the construction of the Motor Vessel and by signing the Original Contract on Plaintiff Matienzo's behalf. (Pl.'s Opp'n [D.E. #47] Ex. A at 2, 3.) Additionally, Manolo testified that he had authority to conduct a range of activities on Plaintiff Matienzo's behalf with respect to the Motor Vessel, including negotiating, entering into contracts, amending the contracts, and making changes to the construction and design of the Motor Vessel. (*Id*.) In addition to his deposition testimony, Manolo signed a sworn affidavit attesting to the existence of an agency relationship with Plaintiff Matienzo. (Pl.'s Opp'n [D.E. #47] Ex. C.) In his affidavit, Manolo stated that, beginning in 2003 he was authorized to negotiate with Defendant on behalf of Plaintiff Matienzo. (*Id*. at 1.) Again, Defendant does not offer any record evidence contradicting these facts. Manolo's deposition statements, along with his attestations in his affidavit, indicate that he accepted the agency relationship with Plaintiff Matienzo.

　　　　　　　　　　(c)　　*Control of Agent*

There is also evidence on the record that Plaintiff Matienzo controlled, or at least, had the

right to control, Manolo Matienzo. While Manolo was responsible for negotiating changes and had the authority to sign contracts on Plaintiff Matienzo's behalf, Plaintiff Matienzo had financial control over the expenditures for the Motor Vessel. Plaintiff Matienzo stated that although he authorized Manolo to make decisions on Plaintiff Matienzo's behalf regarding the Motor Vessel, Plaintiff Matienzo provided the money to pay Defendant, which he would give to Manolo after Manolo explained to him the need for the money. (Pl.'s Opp'n [D.E #47] Ex. B at 8.) Additionally, both Plaintiff Matienzo and Manolo attested, in their affidavits, to the agency relationship between them, and they specifically attested to Plaintiff Matienzo's right to control Manolo's actions. (Pl.'s Opp'n [D.E #47] Ex. B, C.) In their affidavits, both Plaintiff Matienzo and Manolo stated that Plaintiff Matienzo had the right to control and ultimate control over Manolo's actions as his agent. (*Id*. at 1.) Again, Defendant does not offer any record evidence contradicting these facts. Plaintiff Matienzo's deposition statements, along with his and Manolo's affidavits, indicate that Plaintiff Matienzo controlled, or at least had a right to control, Manolo's actions.

### 2. *Second Contract Signed in Capacity as Agent*

The record evidence indicates that an agency relationship existed between Plaintiff Matienzo and Manolo Matienzo, and Defendant does not offer any contradictory facts. However, Plaintiff Matienzo's depositions and affidavits, along with Mazyer Hatami's affidavit, create a genuine dispute of material fact as to whether Manolo Matienzo signed the Second Contract in his capacity as Plaintiff Matienzo's agent. Because a principal need not be named in a contract in order to sue on it, nor must a third party know that an agent is signing on behalf of a principal in order to be liable to the principal, there is record evidence indicating that Manolo signed the Second Contract in his capacity as Plaintiff Matienzo's agent. In Florida, if an agent contracts with a third party on behalf of a principal without disclosing that he is doing so, the principal, deemed an "undisclosed principal,"[7] can sue on the contract. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1215 (5th Cir. 1969); *Arnold Altex Aluminum Company v. Sire Plan, Inc.*, 149 So.2d 79, 80 (Fla. 3d Dist. Ct. App. 1963). For example, in *Lightening Fixture & Elec. Suppl. Co. v.*

---

[7]"A principal is undisclosed if, when an agent and a third party interact, the third party has no notice that the agent is acting for a principal." Restatement (Third) Agency § 1.04(2)(b) (2006).

*Continental Insurance*, the Fifth Circuit determined that, under Florida law, an undisclosed principal on an insurance policy could recover from the insurance company who issued the policy. *Lighting Fixture & Elec. Supply Co.*, 420 F.2d at 1215. The Fifth Circuit determined that unless the contract a third party made with the principal's agent expressly or impliedly "excluded liability to any undisclosed principal or to the particular undisclosed principal," the undisclosed principal on whose behalf the contract was made could sue on the contract. *Id*. (internal citations omitted). Likewise, in *Arnold Altex Aluminum Company v. Sire Plan, Inc.*, the Third District Court of Appeals determined that an undisclosed principal could assign its contractual rights because a contract between a third party and the agent of an undisclosed principal was a "direct contract between [the third party] and [the undisclosed principal]." *Arnold Altex Aluminum Company v. Sire Plan, Inc.*, 149 So.2d at 80, n.1.

Both Plaintiff Matienzo and Manolo stated in their affidavits that Manolo entered the Second Contract on Plaintiff Matienzo's behalf. (Pl.'s Opp'n [D.E. #47] Ex. C, D.) In his deposition, Plaintiff Matienzo said that although he did not know the legal term for his arrangement with Manolo, he considered himself the principal to the Second Contract, despite its being signed by Manolo and naming him as the buyer, because they were "the same person." (Pl.'s Opp'n [D.E. #47] Ex. B. at 6.) Because Manolo was his "rep and right hand person," he said, Manolo's signature on the Second Contract was tantamount to his own signature. (*Id*.) Plaintiff Matienzo testified that even after the Second Contract was signed, he believed that he would take title to the Motor Vessel. (*Id*. at 5.) Under Florida law, an undisclosed principal—Plaintiff Matienzo's designation if Manolo indeed signed the Second Contract on his behalf, as he asserts he did—can sue on a contract without disclosure of the agency relationship. *Lighting Fixture & Elec. Supply Co.*, 420 F.2d at 1215; *Arnold Altex Aluminum Company*, 149 So.2d at 80, n.1. However, Mazyer Hatami, who signed both the Original Contract and the Second Contract on behalf of Defendant, testified that although Plaintiff Matienzo had been listed on the Original Contract as the buyer of the Motor Vessel, Manolo Matienzo expressly instructed Hatami to put his name on the Second Contract as the buyer of the Motor Vessel. (Def.'s Opp'n to Mot. Summ. J., [D.E. #44] Ex. A at 2–3.) Hatami testified that Manolo told him that his family decided the Manolo, not Plaintiff Matienzo, would be official owner of the vessel. (*Id*.)

In addition to Hatami's testimony, there are several facts that Defendant contends indicate that Manolo Matienzo did not sign in his capacity as Plaintiff Matienzo's agent: (1) Plaintiff Matienzo's statement that he authorized Manolo to make the Second Contract in his name[8]; (2) Manolo's statement that the Second Contract was between him and Defendant[9]; and (3) the fact that the Second Contract, signed by Manolo, also identified him as the buyer[10]. Defendant asserts that there is a conflict between Planitiff Matienzo and Manolo Matienzo's deposition statements, which indicate Manolo did not sign the Second Contract in his capacity as Plaintiff Matienzo's agent, and their affidavits, which indicate that he did. Defendant contends that this conflict precludes Plaintiff Matienzo from relying on those affidavits to establish that Manolo Matienzo signed the Second Contract as Plaintiff Matienzo's agent. However, the deposition testimony read as a whole, does not clearly contradict the affidavits. While Plaintiff Matienzo did testify during his deposition that he authorized Manolo to make the Second Contract in his name, he also testified that even though Manolo was listed on the Second Contract as the buyer, he—Plaintiff Matienzo—was supposed to take title to the Motor Vessel. Additionally, although Manolo stated that the Second Contract was between him and Defendant, since the deposition testimony also includes facts indicating (1) that an agency relationship existed between Plaintiff Matienzo and Manolo Matienzo; (2) that Manolo's authority as an agent included the ability to enter into contracts; and (3) that Plaintiff Matienzo believed that Manolo entered the Second Contract on his behalf. Rather, Plaintiff Matienzo and Manolo Matienzo's depositions and affidavits, along with Mazyer Hatami's testimony, create a genuine dispute of material fact as to whether Manolo Matienzo signed the Second Contract as Plaintiff Matienzo's agent.

### C. Count IV: Conversion

Defendant also moves for summary judgment on Count IV, Plaintiff Matienzo's conversion claim, but does not cite any facts relevant to Count IV. Rather, Defendant challenges the legal definition of conversion, which it contends includes the demand for the return of converted property.

---

[8] Pl.'s Opp'n [D.E. #47] Ex. B at 3, 5.

[9] Not. [D.E. #56] Depo. of Manolo Matienzo at 21.

[10] Compl. [D.E. #1] Ex. A at 1.

...

(Def.'s Mot. Summ. J. [D.E. #41] at 14.) Defendant contends that it is entitled to summary judgment because there are no facts in the record showing that Plaintiff Matienzo demanded the return on the allegedly converted funds. (*Id*. at 14–15.)

Under Florida law, the elements of conversion are: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Gemb Lending, Inc. v. RV Sales of Broward, Inc*., No. 09-61670-CIV, 2010 WL 3385343, at *6 (S.D. Fla. Aug. 25, 2010) (internal citations omitted); *Thomas v. Hertz Corp*., 890 So.2d 448, 449 (Fla. 3d Dist. Ct. App. 2004). Demand is not an element of conversion. Demand and refusal "constitute evidence that a conversion has occurred," but do not have to be proved "where the conversion can be otherwise shown." *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So.2d 1157, 1161 (Fla. 3d Dist. Ct. App. 1984) (internal citations omitted). Conversion can be shown when the "act complained of amounts to a conversion regardless of whether a demand is made." *Goodrich v. Malowney*, 157 So.2d 829, 832 (Fla. 2d Dist. Ct. App.1963). Plaintiff Matienzo contends that Manolo Matienzo gave Defendant a check with instructions that Defendant should use the check to pay a subcontractor who was building part of the Motor Vessel but that, upon cashing the check, Defendant did not pay the funds to the subcontractor, as directed by Manolo Matienzo. (Compl. [D.E. #1] at 7.) Mazyer Hatami, President of Defendant Mirage Yacht, testified that, contrary to Plaintiff Matienzo's allegations, "Mr. Matienzo did not instruct me to submit said funds as alleged." (Not. [D.E. #13] Sworn Decl. of Mazyer Hatami at 3.)

In Florida, "a creditor's failure to apply funds as directed by a debtor constitutes a conversion." *Eagle v. Benefield-Chappell, Inc*., 476 So.2d 716, 718 (Fla. 4th Dist. Ct. App. 1985) (citing *All Cargo Transport, Inc. v. Florida East Coast Ry. Co.*, 355 So.2d 178, 179 (Fla. App. 1978)). In *Eagle v. Benefield-Chappell, Inc*., the Fourth District Court of Appeals determined that a conversion occurred when a decorating firm used client funds expressly designated for the purchase of furniture for other expenses without authorization. *Eagle*, 476 So.2d at 718. Assuming, as the Court must do, that Plaintiff Matienzo's allegations are true, Defendant's use Plaintiff Matienzo's funds for other than their expressly designated purpose constitutes conversion. However, since Mazyer Hatami contends that Manolo Matienzo "did not instruct him to submit the funds as alleged," there exists a genuine dispute of material fact as to whether Defendant converted Plaintiff

Matienzo's funds, and thus, summary judgment as to Count IV is not appropriate. Furthermore, demand is not an element on conversion under Florida law, and Plaintiff Matienzo's conversion claim is based on an act that amounts to conversion regardless of whether Plaintiff demanded the return of allegedly converted property. Therefore, Defendant has not met its summary judgment burden with regard to Count IV.

## IV.    CONCLUSION

For the forgoing reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment is DENIED.

DONE and ORDERED in Chambers, Miami, Florida, on April 12, 2011.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of record